**FISHER v. KANSAS CITY, M. & O. R. CO.**

No. 22991. Oct. 16, 1934.

W. L. Owen and J. Wilford Hill, for plaintiff in error.

Rainey, Flynn, Green & Anderson, for defendant in error.

PER CURIAM. Action by plaintiff against defendant in error and the Atchison, Topeka & Santa Fe Railway Company to recover damages suffered by plaintiff, who, with two fellow employees under the direction of a foreman, was engaged in removing heavy planks from the railroad crossing and depositing them on the ground 12 or 15 feet from such crossing. While the three employees were carrying the plank it fell to the ground and injured the foot of plaintiff. Plaintiff dismissed the action as against Atchison, Topeka & Santa Fe Railway Company. The issues were joined between plaintiff and defendant. Plaintiff introduced his evidence and rested. Defendant demurred to the evience. The demurrer was sustained, and judgment was rendered in favor of defendant and against plaintiff for costs. Motion for new trial was duly filed and was overruled.

It is agreed by both sides that the defendant was a common carrier engaged in commerce between the states, and that the action is governed by the Federal Employers' Liability Act (45 USCA secs. 51-59).

Plaintiff assigns as errors:

(1) The overruling of the motion for new trial.

(2) Rendering judgment in favor of defendant.

(3) Sustaining the demurrer of defendant to evidence of plaintiff.

(4) Overruling a request of plaintiff for permission to amend his petition to conform to proof.

The first three assignments of error are presented together, and under those assignments the only question involved is whether or not the evidence introduced by plaintiff sufficiently proved facts constituting negligence on the part of employees of defendant, and that the injuries sustained were the proximate result of such negligence.

The evidence shows that three employees of the defendant were engaged under the direction and with the co-operation of a foreman, in removing heavy planks from a railroad crossing in the city of Cherokee and placing them on the ground at a distance of 12 or 15 feet from the crossing. The planks were about four inches in thickness, ten inches wide, 12 feet long, and weighed 400 or 500 pounds each. One plank was moved at a time. Three men, including plaintiff, moved the planks, one man at each end and one in the center. The foreman instructed Russell Newlin, one of the three, to give a warning signal when they were ready to deposit the plank, and that the three should then throw the plank away from them. One plank was successfully moved, the signal given, and the plank was deposited on the ground. The second plank was being carried by the same three men, plaintiff being the center man, toward the place where the first was deposited, but before reaching that place and about four feet from it, probably without any warning, the plank dropped to the ground, struck on its edge, turned over on plaintiff's foot, causing the injury.

The record shows very little evidence of the circumstances indicating the cause of the dropping of this second plank. Plaintiff's brief states that plaintiff testified that before arriving at the place where the first plank was deposited, the other two men "turned loose of the plank without the customary warning, permitting it to drop to the ground, plaintiff attempted to get out of the way, but was unable to avoid being struck by the plank." The case-made shows that plaintiff testified, in substance, as follows, referring to the second plank:

"We carried it out until about three or four feet from where the other one was. The plank was dropped and it went on the edge and turned back on one of my feet. * * * Well, the boys let it go. * * * No signal given."

Plaintiff's brief also states that Joe Fisher, son of plaintiff, being one of the three men, testified in regard to the second plank:

"They * * * carried it in the same manner to within about four feet of the place they had deposited the first plank when witness felt the plank dropping and he turned loose of it and stepped back. That no warning

signal was given. * * * The plank lit on the ground on its edge and turned over on his father's foot."

This is substantially all of the testimony in regard to the falling of this second plank and its striking the foot of plaintiff, and this testimony presents the question, which is practically the only question involved in the sustaining of the demurrer, as to whether or not the plaintiff has sustained the burden by proving that any employee of defendant was negligent, and that that negligence was the proximate cause of the falling of the plank and of its striking and injuring the foot of plaintiff.

There seems to be no evidence to show just why the plank was dropped or why "the boys let it go." It seems clear that no signal was given to throw the plank and allow it to drop, and the fact is not disputed that, in carrying the second plank, they had not yet arrived at the place where the first plank was thrown to the ground, and therefore the time for giving of the signal to throw the plank had not arrived when the boys let the second plank go.

It seems apparent from these facts that any one of many different circumstances may have arisen which compelled the dropping of the plank without negligence on the part of either one of the three men. Joe Fisher, at one end, said that he felt the plank falling. The plaintiff was in the center. The man at the other end was not used as a witness. Any one of the men may have had an accident; a hand may have weakened— a foot may have stumbled or slipped—a cramp or some illness may have come to any one of the three men. It hardly seems to us that the plaintiff has proved by evidence that any one of the three men failed to do that which an ordinarily prudent man under like circumstances would have done, and that such failure was the cause of the injury to plaintiff. Under these circumstances, we believe that the plaintiff has failed to meet the burden of proof, and that if the court, instead of sustaining the demurrer, had submitted the evidence to the jury, the jury in order to find a verdict in favor of plaintiff would have had to base that verdict upon pure speculation or conjecture.

The Federal Employers' Liability Act (USCA Title 45, section 51, 35 Stat. 65) provides as follows:

"Every common carrier by railroad while engaged in commerce between any of the several states * * * shall be liable in damages to any person suffering injury while he is employed by such carrier in such commerce, * * * for such injury * * * resulting in whole or in part from the negligence of any of the officers, agents, or employees of such carrier, or by reason of any defect or insufficiency, due to its negligence, in its cars, engines, appliances, machinery, track, roadbed, works, boats, wharves, or other equipment."

This law, in defining the liability of interstate railway carriers, supersedes the state law covering the same field. Mondou v. New York, N. H. & H. R. Co. 223 U. S. 1, 56 L. Ed. 327, 38 L. R. A. (N. S.) 44; Seaboard Air Line Ry. v. Kenney, 240 U. S. 489, 60 L. Ed. 762.

In the present case it was necessary for the plaintiff to produce some substantial evidence to the effect that some employee of the defendant was guilty of some negligence in carrying or dropping the second plank, and that the injury complained of resulted in whole or in part from such negligence. The negligence alleged in plaintiff's petition was that:

"Said plank was carelessly and negligently thrown down by said employees of the defendants who were assisting in the removal of said planks; * * * that through the said carelessness, negligence and mismanagement of said defendants, their agents, servants and employees, the said plank was dropped and it fell on the left foot of plaintiff and said foot was greatly and permanently injured as follows: * * * that said injury so sustained by plaintiff was caused through the incompetence, negligence, and carelessness of the said agents and employees of the defendants; that said employees were wholly incompetent to perform said service and employment with care and safety, which fact was well known to the defendant and wholly unknown to plaintiff; and the said agents were employed and directed to perform such service with plaintiff without due regard to plaintiff's safety."

No evidence is cited relating to the incompetence of employees, and the evidence with reference to direct negligence on the part of the employees, we have already stated. Plaintiff claims that this evidence is sufficient to establish primary negligence on the part of defendant and its employees. This the defendant denies. Thus arises what seems to be the chief, if not the only, substantial issue in the case. We agree with the trial court. As already stated, there is no evidence to prove unfitness or incompetence of any employee; and no evidence to prove want of due care on the part of an employee

has been cited. So far as the evidence shows, all three employees were capable and were exercising reasonable care in their work in handling such heavy material, each having due regard to the safety of all three.

One claim that plaintiff makes is that the accident occurred by reason of the fact that one of the employees, who was instructed by the foreman to give warning at the time that the plank was to be dropped, failed to give such warning, but the evidence is undisputed that the time for giving the warning had not arrived. owing to the fact that the plank dropped before it had been carried to the point where it should have been dropped, and therefore this claim on the part of plaintiff is not available.

It is not enough for the plaintiff to prove the possibility of negligence or possibility that the injury resulted from such negligence. The burden is upon the plaintiff to establish both of these facts by direct or circumstantial evidence. The fact that an injury occurred does not of itself constitute sufficient evidence of negligence. Neither does the fact that an injury occurred, even if negligence also is proved, of itself constitute evidence that the injury is the result of such negligence. San Antonio, etc., R. Co. v. Wagner, 241 U. S. 476, 60 L. Ed. 1110; Illinois Cent. R. Co. v. Skaggs, 240 U. S. 66, 60 L. Ed. 528.

Plaintiff must prove negligence even where the local state statute provides that, in actions against railroads, proof of injury inflicted by a steam engine shall be prima facie evidence of negligence. New Orleans, etc., R. Co. v. Harris, 247 U. S. 367, 62 L. Ed. 1167.

"The jury may not be permitted to speculate as to the cause of a personal injury, and the case must be withdrawn from its consideration unless there is evidence from which the inference may reasonably be drawn that the injury suffered was caused by the negligent act of the defendant." A., T. & S. F. R. Co. v. Toops, 281 U. S. 351, 74 L. Ed. 896.

"A verdict based upon mere conjecture is not sustained by sufficient evidence." Ingram v. Dunning, 60 Okla. 233, 159 P. 928.

"Where there is entire lack of evidence to sustain any material issue found by a general verdict, such verdict will be set aside and a new trial granted." Howard v. Farrar, 28 Okla. 490, 114 P. 695.

Plaintiff quotes at length from the case of St. Louis & S. F. Ry. Co. v. Cox, 31 Okla. 444, 122 P. 130, and claims that it is decisive of the present case. In that case two employees were carrying an oak tie from one point to another. The plaintiff walked in front carrying one end and the other employee walked behind carrying the other end. The petition alleged that when they reached the place where the foreman had directed them to take the tie, and while plaintiff's back was turned, the other employee without warning, carelessly, negligently, and with wanton disregard for the safety of plaintiff, threw his end of said tie to the ground. A verdict was rendered for the plaintiff. The only question raised upon that appeal was the effect of the provision of the Constitution abrogating the rule in regard to liability of an employer for the negligence of a fellow servant. The case simply holds that the petition charged facts sufficient to constitute actionable negligence, and that section 36 of article 9, of the Constitution was in force when the cause of action arose. There is no question in that case as to the sufficiency of evidence, and the case therefore is not in point here.

In the case of Detroit, G. H. & M. Ry. Co. v. Maldonado (C. C. A. 6) 59 F. (2d) 911, the Circuit Court of Appeals reversed the United States District Court for the Eastern District of Michigan, and held that evidence was insufficient to make issue for jury where the negligence of fellow servant in prematurely letting go of rail proximately caused injury sustained by section hand when the rail thrown on a pile of rails rebounded. In that case there was evidence that a steel rail would bounce when thrown upon a pile of rails, and the rebound might have been caused by the particular manner in which the rail was handled, by the force used to throw it, or by the angle by which it struck the pile of rails. The opinion in that case cites the case of Santa Fe v. Toops, 281 U. S. 351, supra., and also says:

"The rebound might have been caused in a number of ways, —among others, by the particular manner in which the rail was handled; by the force used to throw it; and by the angle at which it struck the pile. There is, of course, a possibility that appellee was injured because his fellow servants acted too hastily, but this is only a possibility. See Atchison, T. & S. F. Ry. Co. v. Saxon, 284 U. S. 458, 52 S. Ct. 229, 76 L. Ed. 397; American Oil Co. v. Frederick, 47 F. (2d) 54, 56 (C. C. A. 6). There is no substantial evidence to support such view."

One of the defenses raised in defendant's

286

answer is that of assumption of risk. Considering our views on the subject of lack of evidence to show negligence, the defense of assumption of risk is hardly necessary to discuss. Nevertheless, we think it a substantial defense in this case. The provision of the Federal Employers' Liability Act on this subject is as follows:

"In any action brought against any common carrier under or by virtue of any of the provisions of this chapter to recover damages for injuries to, or the death of, any of its employees, such employee shall not be held to have assumed the risks of his employment in any case where the violation by such common carrier of any statute enacted for the safety of employees contributed to the injury or death of such employee." Section 4, 45 USCA sec. 54.

The United States Supreme Court, in the case of Seaboard Air Line Ry. v. Horton, 233 U. S. 492, 58 L. Ed. 1062, has held:

"5. Federal statutes only were intended by the phrase 'any statute enacted for the safety of employees' in the Employers' Liability Act of April 22, 1908, secs. 3, 4, abolishing the defenses of contributory negligence and assumption of risk in any case where the violation by the carrier of any statute enacted for the safety of employees contributed to the injury or death of an employee.

"6. The elimination of the defense of assumption of risk by the Employers' Liability Act of April 22, 1908, s. 4, in any case where the violation by the carrier of any statute enacted for the safety of the employees contributed to the injury or death of the employee, plainly evidences the legislative intent that in all other cases such assumption of risk shall have its former effect as a complete bar to the action."

And in the case of Chesapeake & O. R. Co. v. Kuhn, 284 U. S. 44, 76 L. Ed. 157, the Supreme Court has said:

"3. In actions under the Federal Employers' Liability Act, wherever brought, the rights and obligations of the parties depend upon it and applicable principles of common law as interpreted and applied in the federal courts, without regard to the views of the courts of the state in which the action is brought."

We conclude on this subject that the plaintiff assumed the risk of the happening of ordinary events which would lead to the dropping of the plank, except those due to negligence in whole or in part of his fellow employees.

Plaintiff claims that the court erred in overruling the motion of plaintiff for permission to amend his petition to conform to the proof. Plaintiff does not seem to have filed a written motion, and the record does not show definitely the amendment which plaintiff desired to make. We assume, however, from the consideration of the language of the petition, which alleged that the plank dropped upon plaintiff's foot, that plaintiff desired to change that so as to allege that the plank dropped upon the ground striking on its edge and turning over onto plaintiff's foot, as the evidence shows the facts to have been. We hardly think the amendment was material. The allegation of the petition seems to be broad enough to have covered the facts as proved; and, since the amendment of a petition after the evidence is closed, rests largely in the discretion of the trial court, we think the trial court committed no reversible error in refusing plaintiff's request. We will add further that, in view of the conclusions we have reached in regard to the insufficiency of evidence to prove negligence, the proposed amendment to the petition would be unimportant.

In our judgment, the decision of the trial court must be affirmed, and it is so ordered.

The Supreme Court acknowledges the aid of Attorneys S. N. Hawkes, L. A. Rowland, and Archibald Bonds in the preparation of this opinion. These attorneys constituted an advisory committee selected by the State Bar, appointed by the Judicial Council, and approved by the Supreme Court. After the analysis of law and facts was prepared by Mr. Hawkes and approved by Mr. Rowland and Mr. Bonds, the cause was assigned to a Justice of this court for examination and report to the court. Thereafter, upon consideration, this opinion was adopted.